The court, please call the next case. Case number 415-1002, Robert E. Todd v. Workers' Compensation Comm'n. Counselor, you may proceed. Thank you. May it please the court, counsel, my name is Alan Muller and I'm representing Mr. Todd in this case. The issue before the court is ultimately whether there is sufficient evidence in the record to support the Commission's finding of no causal connection between the petitioner's claimant, Mr. Todd's, low back and neck conditions and his December 2009 injury. Could you tell us why Dr. Anderson's opinions don't satisfy the requirement? Yes, I will. Dr. Anderson offers an opinion. He sees the claimant in April of 2010. He takes one line from Dr. Fletcher's January 2010 office note in which he says, there's no substantial change in Mr. Todd's condition from when he had previously seen him, which was about two months earlier. Mr. Todd has a long history of problems, as the record reflects. But he saw Dr. Fletcher in November of 2009 and Fletcher's report, if you read it, suggests that he's been in the treatment mode for a long time. Fletcher wants him out of that mode. He wants him to get on with his life. He gives us his mantra, less is more. When we jump ahead to January after Mr. Todd's injury in December 2009, of course there's no question about accident here. He's carrying a four-by-eight concrete form backwards through mud. He falls on his right side with this, holding this four-by-eight concrete form. Dr. Fletcher later explains, at the time if you look at his January 11, 2010 note, which was immediately after this injury, he says, I'm really hesitant to get this guy back into treatment mode. So I don't see any substantial change in his condition. Notwithstanding that, he says, I want to do cervical x-rays, I want him to have physical therapy. He's hopeful, wishful thinking that perhaps this is just a temporary setback. Because it would take him a hell of a long time to get this guy back to work after his prior injury. A lot of therapy, a lot of treatment. So we look at, jump ahead to February, when Fletcher sees him again. By this point, he's recommending an MRI scan of the lumbar spine, he's recommending epidural steroid injections. He also injects this guy's shoulder. Dr. Anderson didn't look at anything other than Fletcher's November 2009 office note and Fletcher's January 2010 office note. His whole opinion is based on that one line that there's no substantial change. Well, didn't the commission also, however, have a reason or articulated a reason to reject Dr. Fletcher's opinion on causation? Claimant's testimony of medical records demonstrates he began experiencing depression at least as early as June 20, 2003, six years before the work accident. The doctor explained that the claimant's depression worsened following the December 2009 accident because work was important to the claimant's self-esteem and his injuries prevented him from working. They noted, however, that the record reveals that the claimant continued working following the accident. It was not until November 23, 2010, when he underwent right shoulder surgery, that Dr. Poricki took him off work. So listen there a little bit. They found there was a conflict in Fletcher's testimony. I don't think there's a conflict. And if you look at his February note, Fletcher's saying he is back at work. They've accommodated his restrictions. He's got pretty substantial permanent work restrictions as of November 2009. He's working at that point. Well, I think the point is they have to accept Fletcher's opinion that the claimant's depression increased as a result of the December 2009 accident. And Fletcher's approach to that is the reason we keep this guy working, the reason he didn't want to put him back in the treatment mode in January 2010, was because of his depression. You know, this guy needs to keep working. That's the best therapy for the depression. Keep him working. Keep his mind off his problems. And that's, you know, I think that's pretty logical. There's no conflict in Fletcher's testimony there. Yes, the guy's depression increases. If he's off work, back in the treatment mode, and this is why Fletcher's hesitant to put him back into that, then all he does is sit around all day and think about, you know, geez, I can't work anymore. This is, you know, my sole outside activity. And you look at what he testifies he's doing at work, you know, he's doing it, he likes to do it, and even afterwards, after he has the shoulder surgery, when you get into the vocational issue, this guy really wants to go back to work for the city. As Justice Hoffman alluded to, the case really boils down to the battle of the experts on each side. And as I understand it, the gist of your argument is that Anderson's testimony was flawed because of an improper foundation or he didn't consider all the factors? Is that sort of what you're saying? Yeah, that's quite clear. I mean, he sees the guy in April. He doesn't have any notes after that January note. He doesn't have Fletcher's February 2010 note. He doesn't have the therapy records from that period of time. If you look at it, the shoulder part of this case was accepted by the city, primarily because a different Section 12 examiner had found the shoulder to be related to this December 2009 injury. If you look at Fletcher's January note, he says, I don't see any substantial change in his condition. That's, you know, look at Anderson's report, that's what he relies on, okay, that there's no change. He's back to his baseline status. Maybe he had an injury in December, but by January, he's back to his baseline status. If we could take that same sentence and apply it to the shoulder and say, well, yes, later they were, you know, in spite of Fletcher's wishful thinking, they find that his shoulder, he retore the rotator cuff, he tore the labrum, and he tore the biceps tendon, okay? But that, if their Section 12 examiner from the shoulder had jumped on that same line of Fletcher and said there's no substantial change, then the shoulder isn't related either. But it was. Let's assume that you can legitimately point out there were some discrepancies or flaws in Dr. Anderson's testimony. I'm sorry? Let's assume that you can legitimately point out there were some discrepancies or flaws allegedly in Dr. Anderson's testimony. How does this get us past the well-settled rule that the commission is the sole judge of the credibility of the testimony, including experts, and the weight to be given to the testimony, and we don't substitute our judgment for that of the commission on these matters? So how does that get us past that line of cases? Again, the case law and manifest weight says is there sufficient evidence in the record to support the commission's findings? And you have Anderson's testimony. Yeah, and what is Anderson's testimony based on? Now, if, you know, there are cases in which this court has said. Hold on a second. You're talking about a guy who had a cervical fusion in May of 2007 and postoperatively always remained symptomatic. Yes. This man was not asymptomatic ever. Oh, I agree, Your Honor. And he continued to seek medical care. In fact, Fletcher once said that the accident worsened his condition a little bit. And Anderson turned around and said it was nothing more than a temporary exacerbation and that it didn't result in any permanency. It was not a permanent aggravation and didn't accelerate his preexisting cervical condition. So why couldn't the commission rely on it? The cervical, I don't think, there's no, as you see the treatment after this injury, nobody's recommending more treatment in the cervical. It's the low back. Well, he also said, he said, did not permanently aggravate or accelerate his preexisting cervical and lumbar standing condition. Right. And that's Dr. Anderson's opinion. Yeah. What's the basis for his opinion? Because the guy had preexisting condition, was always asymptomatic. He does have preexisting condition. There's no question about that. He has ongoing treatment. He has, although in November of 2009, Dr. Fletcher says his cervical radiculopathy is stable. His lumbar radiculopathy is stable. Fletcher, again, is trying not to treat this guy. He wants the guy back at work, which will help his depression, help everything else. The guy is back at work. Okay. But what Anderson's, the whole opinion is, you know, if you read his report, you read his deposition, I found, you know, I didn't find anything, you know, that he does have all these prior problems that are clearly delineated in the record. So I think whatever must have happened has run its course. Well, it hadn't with the shoulder, so why, you know, and again, Fletcher in January doesn't even talk much about the shoulder, but a month later he injects it, the guy ends up with a bunch of treatment. Very hopeful in January that the guy isn't going to get back in the treatment mode, but he does for the shoulder. That's clear. So the same accident where he falls and rips up his shoulder, is it inconceivable that the low back was aggravated? Well, absolutely. The question is, is it a temporary or permanent aggravation? Anderson says it's a temporary one based on that one note of Fletcher. Okay. He didn't see the guy before Fletcher did. Fletcher later in his deposition talks about what he was thinking at the time of that initial note when he says there's no substantial change. He says, you know, again, less is more. I don't want to get him, I don't want to, even in that note says I don't want to, you want me to finish the comment or should I? Yes, go ahead. Okay. Even in that note he says I'm hesitant to order more testing and order more treatment on the low back. He wasn't suggesting any of that back in November of 2009. He was saying the guy is done, follow up with me in three months. The guy comes back in two months because of this new injury and thus sets off the course of a long period of treatment. Again, Anderson's, I would encourage you to look at Anderson's note. It's taking something out of a vacuum. It's like me saying, well, I heard this commentator say the Cubs didn't win the World Series. And I jump all over that and I start tweeting that or I start putting it on Facebook. Well, the comment was the Cubs didn't win the World Series, the Indians lost it. But I have heard the first part of it, they didn't win it, and I'm going to stick with that. I'm going to run with it. Anderson takes that one line from Fletcher and it doesn't matter that Fletcher later says he misinterpreted my office note. Well, what's he misinterpreted? It's completely out of context. Excuse me. The office note says, quote, following his injury, there was no substantial change in his condition other than increase of subjective complaints. That's exactly what Fletcher's note said. And doctors treat on the basis of subjective complaints. Fletcher didn't order any testing at that time to determine what was causing that increase in cervical complaints other than ordering the physical therapy and the cervical spine x-rays. However, a month later, because of the continued shoulder problems, which again, part of those increased subjective complaints, and because of the continued back pain, he's taught once to get an MRI scan of the low back. And he once, you know, he injects a shoulder, does a series of those before finally getting an MRI of the shoulder which showed the rotator cuff. So yeah, all the guy reports with at that initial visit are increased subjective complaints. But we later know from the treatment that there was a basis for those. The MRI scan ultimately done in the lumbar spine some two years later shows a herniated disc with an extruded fragment hitting the S1 nerve root. And that's important. This isn't a bulging disc. This isn't a protruded disc. Something with a free fragment hitting that nerve root. Dr. Fletcher says that's consistent with the symptoms he was presenting with back in January and February of 2010. Dr. Anderson didn't consider any of that. So we believe taken as a whole, the record just doesn't, you know, Anderson's opinion doesn't hold up. It's not entitled to any weight because he looks at these things in a purposeful vacuum saying, oh, I don't want to hear anything else other than that no substantial change line. Again, the subjective complaints are what the doctors start treating. Then they run the diagnostic studies to determine, well, what's the basis for those subjective complaints? And here we have an MRI showing the rotator cuff problems. Later on, showing the lumbar problems. And we think that's why Anderson's opinion, you know, if it were in a vacuum, sure, it supports the commission's decision. But if you look at the totality of the evidence, and this court has done that before, said, you know, the record as a whole just doesn't support the opinions or the decision of the commission. So we'd ask the court to reverse the circuit court, which would confirm the commission's decision. If there are no other questions, I'll sit down. Thank you, counsel. Thank you. Counsel, you may respond. May it please the court. Counsel, my name is Boyd Roberts with the Hasselberg Greedy Snodgrass Urban and Wentworth Firm in Peoria. And we represent the city of Springfield to respond in this matter. They're Department of Public Works specifically. I think this court and its questions to counsel has identified the main issue here. Why don't you just deal with the last comments made by opposing counsel, because that seems to be the crux of this case. The crux of this case would be Dr. Anderson's report. And whether it's significantly flawed and whether it should be essentially... Whether it's sufficient. Whether it's sufficient to support the manifest way. Tell us why it is. I believe Dr. Anderson's report in his deposition testimony, which is part of this record, is sufficient to support the arbitrators and the commission's finding of no causation in this matter on those body parts. The shoulder set aside, because that was found to be causally related. Because it relies on the records he had at the time, which was based on the medical history of this petitioner, which is extraordinarily extensive. Multiple work done to his back. He's had multiple workers' compensation claims. He went through those records, and he looked at the contemporaneous record, the most contemporaneous medical record we have, which is Dr. Fletcher's report, an office visit from January of 2010, about one month after the accident date in December of 2009. And in that report, as counsel stated, he says that there was no substantial change. He also notes, Dr. Fletcher notes, the petitioner stating in his history that his back has pretty much eased up. And it's not causing him as much problems at that time. That's not a worsening of conditions. It's not an aggravation. It's certainly not a permanent aggravation. Dr. Anderson says it could be a temporary aggravation. But at that point in time, Fletcher was focused on, he was focused on the petitioner's depression, and then he referred out the shoulder work to Dr. Borowiecki, which eventually the petitioner underwent shoulder surgery for. Excuse me. So in this case, their entire argument hinges on whether Fletcher's initial office visit, where he stated there was no significant change in the petitioner's condition, is sufficient for this court to sufficiently flawed for this court to arrive at a conclusion that would have been clearly opposite from that of the arbitrator or the commission. And I submit that it's not. Whether or not the evidence was there to support this decision, this court is not charged with reweighing the facts or judging which expert, the IME or the treating physician or multiple experts, which one should carry the day. That's true to a certain extent, but we have to reweigh the evidence in order to determine whether it's against the manifest weight. There is a weighing process. So to say that we don't weigh the evidence isn't exactly correct. I prefer to think of more of an examination or a review of the evidence. We don't review it anew. Correct. Correct. And while he said that this is done in a vacuum, I don't think that that's kind of actually true here for this court's task, is you look at the facts in the record, in this voluminous record that you have for this case, and you have to look at it and decide, is there sufficient evidence here to say that somebody screwed up? Somebody really screwed up. You have the testimony of Dr. Anderson, obviously. So you're saying unless his testimony is inherently flawed, or he's totally ignoring the evidence, the commission should be entitled to re-align it. Well, even if it was in... There's a degree of... Don't say it's inherently flawed. No, I'm not going to say that, but what my argument there is that to what degree is it flawed, and is it flawed sufficiently enough for this court to overturn? Well, are you conceding it is flawed? No, I'm not. Well, then why go down that path? If your argument is it's not flawed, then leave it be. I believe that it is not flawed, but if this court were even to consider... If this court were to consider that, I don't believe that that's sufficient enough to even get to the point of manifest weight. Why is it not flawed? Because the opposing counsel is saying it's flawed because there's an MRI done, and there's this free-floating fragment, and... That was all done three years plus after this accident date with this petitioner's history. And also, let's look at the need, the necessity for that treatment that was subsequently done. Dr. Fletcher's report ties in a lot of it, but Dr. Smucker's report, he makes no mention of any causation for the necessity for that treatment relating back to the December 09 accident date. And I think that supports Dr. Anderson's position of a temporary exacerbation as a worst-case scenario here. I think that there's... The petitioner would have you believe that his opinion, Fletcher's opinion, rendered... And let's note when it was rendered. It was rendered in anticipation of litigation. It was rendered after he had a chance to review all of Dr. Anderson's reports and his testimony. As we're going to arbitration, the petitioner gets his deposition. He says, no, no, no, no, no, Dr. Fletcher, no, no. That's not what I meant. Well, I mean, obviously, that's somewhat self-serving. In fact, I'd say... Excuse me, don't you consider Dr. Anderson's testimony self-serving? He paid him. He's your IME. If he disagrees with you, you'll never use him again. And I'm sure that that would be a fact that would be considered by the arbitrator in the commission. Who's the sauce for the gander? You may not want to answer that last question on the record because we're being recorded. I understand. But all those factors as to who should be given more credibility or whose opinion should carry the day has already been decided by the arbitrator and by the commission in this matter. And it shouldn't be overturned by this court. It's not flawed. And if this court thinks that there's even some degree of, well, maybe it's not exactly right, I don't think that that's sufficient enough to get to manifest way, to get beyond that standard. This whole... The brief and the argument is all based on the petitioner wanting this court to completely, completely re-weigh. Not even, as Justice Harris said, a small degree of re-weighing or re-examining or whatever sort of semantic word you want to attach to it. But he wants you to completely re-weigh it and completely discard Anderson's opinion, which is not the purview of this court unless it's clearly apparent, which is a high standard, a high degree that this court must come to. And it's simply not present in this case. This court's task is not to make specific findings of fact on review, as those lie solely with the commission, as this court well knows and stated in earlier questioning. Also... Counsel, we know what the standard is. Can we wrap it up by just saying Gunnar Anderson's opinion is sufficient to support the commission's decision and it's not against the manifest way of the evidence? Does your entitled argument dispel... I think that the medical history of this petitioner combined with Dr. Anderson's support and Dr. Anderson's deposition testimony is sufficient enough in this matter that supports the commission's decision such that the petitioner has not met the manifest weight standard and an opposite conclusion is not clearly apparent. Thank you, Counsel. Counsel, you may reply. Very briefly. I hope I shouldn't say that but as I start. Dr. Anderson was deposed here about three years after his examination of petition and that time all of this other treatment had occurred. The shoulder treatment, the MRI, Fletcher's subsequent records. You would think that the city would have presented to Dr. Anderson ahead of that deposition all of these other records. They didn't. All he's still looking at is that one report and that one line from Fletcher's report. Now he's questioned a lot about those other records during his deposition. Did you see these? No, I didn't have those. Would these have changed your opinion? Well, I don't think so. Nothing would have changed my opinion because Dr. Fletcher said no substantial change. I could take issue with Counsel's characterization of Fletcher's later comments about this but you look at his actual office note that first day no substantial change other than subjective complaints. Okay. Did he make this argument to the arbitrator? That Dr. Anderson's basis for his opinion was flawed? I'm sure it was made at that time, Your Honor. I wasn't handling it. Listen to the argument and didn't it hurt you? Well, there are several things in the arbitrator's decision that are a little bit disturbing to me but again, he jumps on this notion that nothing really happened to this guy. But the shoulder, something obviously happened. He had a bad injury. It tore up the shoulder pretty badly even though the shoulder had previously been injured. So why is it and Fletcher didn't figure that out until a month later. He didn't figure that out on January 10th or January 11th that this guy's shoulder is going to go on to need surgery. He also didn't figure out that the low back is bad and it's going to continue to bother him The guy, there's no question from the accident report which I believe is part of the transcript that the guy reported that he hurt his back, neck and shoulder in this accident. When he saw Fletcher three weeks after the accident, he's honest with him. Well, these things all hurt. The low back's eased up a little. Meaning the increase in symptoms has eased up a little. Doesn't mean I don't have any more of these increased symptoms. They've just eased up a little bit. And, you know, Anderson, isn't given anything else. Okay? We're going to stick with this story that we came up with. This one line from Fletcher, that's our saving grace here. We're going to stick with that. That's what he does. And so, yes, the Commission can rely on competent evidence in the record. Is Dr. Anderson's opinion in this regard competent? No, it's purposefully ignorant of everything else that happened after that initial visit. I mean, he's looking at this with blinders. So we'd urge the court to reverse the circuit court and rule in favor of the petitioner. Thank you. Thank you, counsel, both, for your arguments in this matter. We take them under advisement of this judicial issue. Court will stand at brief recess.